69037. SIMMONS v. THE STATE.
69038. HILL v. THE STATE.
(329 SE2d 312)

POPE, Judge.

Appellants Terry Simmons and Sharon Renee Hill were jointly tried and convicted of conspiracy to commit murder. These appeals from their convictions raise similar issues and thus are consolidated for the purpose of review.

1. Both appellants first cite as error the trial court's denial of their respective challenges to the array of the grand and petit juries in the Walker County Superior Court on the ground that the Walker County Board of Jury Commissioners is illegally and unlawfully constituted in that one of its members, Ralph Phillips, is a Walker County Deputy Sheriff and also a bailiff for the grand and petit juries. Although the foregoing argument is raised on appeal, the record discloses that the challenges before the trial court related solely to whether the jury selection procedure had systematically excluded from service citizens between the ages of 18 and 24. It appears that the basis of these motions was the recent Eleventh Circuit Court of Appeals decision in *Willis v. Zant,* 720 F2d 1212 (11th Cir. 1983). The record affirmatively shows that during the pretrial hearing on this matter, evidence was presented which disclosed Mr. Phillips' status as a jury commissioner and also as a deputy sheriff and bailiff. Notwithstanding this evidence, no challenge to the array of the grand and petit juries was asserted on this ground in the court below. "Where the objection urged below is not argued here it must be treated as abandoned and where an entirely different objection is presented in this court, we do not consider it since we are limited to those grounds urged in the trial court. [Cits.]" *Carney v. State,* 134 Ga. App. 816,

817 (216 SE2d 617) (1975). See *Porter v. State*, 143 Ga. App. 640 (1) (239 SE2d 694) (1977). It follows that these enumerations of error present no ground for reversal. See also *Young v. State*, 232 Ga. 285, 286 (206 SE2d 439) (1974); *Thompson v. State*, 55 Ga. 47 (2) (1875).

2. The issue raised by appellants' second enumerations of error, as well as appellant Simmons' third enumeration, is controlled adversely to them by the holding in *Favors v. State*, 173 Ga. App. 567 (2) (327 SE2d 543) (1985).

3. Simmons' fourth and Hills' seventh enumerations challenge the trial court's denial of their general and specific demurrers to their indictments. Both indictments alleged that on July 20, 1983 the named appellant did conspire with the other appellant "to commit the offense of murder upon the person of Kenneth Hill and in furtherance of said conspiracy, did meet with and make arrangements concerning the said corrupt agreement with Georgia Bureau of Investigation Special Agent Richard Hayes, acting under the name of Richard Hill, and did furnish the said [GBI] Special Agent . . . with a check to cover his expenses and instructions on the manner and method under which the said Kenneth Hill was to be killed and murdered." Both appellants argue that their respective indictments were too vague and indefinite to allow them to prepare adequate defenses.

"Every indictment of the grand jury which states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may easily be understood by the jury shall be deemed sufficiently technical and correct." OCGA § 17-7-54 (a). "A person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy." OCGA § 16-4-8. "The indictment[s] in [these cases] clearly [charge] appellants with unlawfully conspiring one with the other to commit the offense of murder upon a named person. Furthermore, [they set] forth the date of the charged offense and [enumerate] the overt acts done to effect the object of the alleged conspiracy. The indictment[s] [are] not vague and ambiguous. [They apprise] appellants of the charges against them with sufficient clarity to permit them to adequately prepare their defense[s] and [are] sufficiently technical and correct — so plain that the nature of the offense charged may easily be understood by the jury. [Cit.]" *Causey v. State*, 154 Ga. App. 76, 78-9 (267 SE2d 475) (1980).

The fact that the subject indictments could have set forth additional specifics regarding the conspiracy — e.g., the locale of the alleged meeting with the GBI agent; the nature of the "arrangements" made to effectuate the proposed murder; the amount, maker and payee of the "expense check"; and the details of the "instructions" given to the purported assassin — did not render them insufficient

under OCGA § 17-7-54 (a). See *State v. Black*, 149 Ga. App. 389 (2) (254 SE2d 506) (1979). See generally *Mell v. State*, 69 Ga. App. 302 (1) (25 SE2d 142) (1943). Nor were the indictments imperfect for failure to utilize the term "overt acts" immediately preceeding the actions alleged to have occurred "in furtherance of said conspiracy." It is clear appellants were sufficiently apprised of the offense charged so as to have suffered no prejudice as the result of the inconsequential omission. See generally *Farrar v. State*, 187 Ga. 401 (2) (200 SE 803) (1939); *Driver v. State*, 60 Ga. App. 719, 722 (4 SE2d 922) (1939); *Duncan v. State*, 41 Ga. App. 655, 657 (154 SE 197) (1930). Finally, the indictments were not insufficient for failure to allege dates specifying the beginning and ending of the alleged conspiracy. See *Causey v. State*, supra at 79; see also *Massengale v. State*, 164 Ga. App. 57 (1) (296 SE2d 371) (1982). Appellants' challenges to the indictments are without merit.

4. Appellants' fifth enumerations cite as error the trial court's refusal to require the State to reveal certain material information pursuant to motions made in accordance with *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). Hill also assigns error in her sixth enumeration to the trial court's denial of her motion to dismiss the charges against her on the basis of the State's alleged violation of its duty to disclose exculpatory evidence under *Brady*. We find these enumerations entirely without merit.

The thrust of appellants' arguments in support of these enumerations of error is that certain information which they view as exculpatory and material was not disclosed to them prior to trial. Assuming arguendo that the information cited by appellants is indeed exculpatory and material, it is clear that *all* this information was disclosed at trial. The holding in *Brady* provides "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. This rule applies to "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U. S. 97, 103 (96 SC 2392, 49 LE2d 342) (1976). The rule in *Brady* does not require pretrial disclosure of favorable information and is not violated where such information is made available at trial. See *Castell v. State*, 250 Ga. 776 (2b) (301 SE2d 234) (1983). Appellants have the burden of showing that the evidence withheld from them so impaired their respective defenses that they were denied a fair trial within the meaning of the *Brady* rule. *Wallin v. State*, 248 Ga. 29 (6) (279 SE2d 687) (1981). "Here, the [allegedly] exculpatory information was not withheld from the jury. The complaint is that it was not furnished in response to . . . discovery request[s]. How has the failure to furnish [appellants]

the evidence in advance of trial impaired [their] defense[s]? It has not been shown. If it is [Hill's] contention that additional time for investigation would have enhanced [her] defense, the proper motion would have been for an adequate recess, not [dismissal of the charges against her.]" Id. at 33-34. Furthermore, the fact that the information was not made available to appellants so that their opening statements would "establish the outline of the case[s] for the jury so that they [could] better follow the evidence" does not require reversal as there has been no showing that this circumstance was detrimental to their cases. See generally *Bowman v. State*, 144 Ga. App. 681 (1) (242 SE2d 480) (1978). We find no violation of the *Brady* rule in this case for any reason assigned. See *Castell v. State*, supra; *Baker v. State*, 245 Ga. 657 (3) (266 SE2d 477) (1980).

5. Simmons' sixth enumeration cites as error the trial court's denial of his motion to produce pursuant to OCGA § 24-10-26. Simmons' motion requested the production of the original cassette recording of the July 20th meeting between himself, appellant Hill and Special Agent Hayes; the complete transcript of the resulting conversation; and the complete arrest and conviction record of one Brenda Parker, alleged by Simmons to be an unindicted co-conspirator. It is clear from the record on appeal that the first two items were in fact produced at trial. It is equally clear from the record that what the trial court denied in regard to this motion was Simmons' attempt to review the requested material "at a reasonable time before trial." The trial court's ruling in this regard was not erroneous. See *Sims v. State*, 251 Ga. 877 (4) (311 SE2d 161) (1984). As to Parker's criminal record, the record on appeal indicates that the prosecution was not in possession of such material. " 'This evidence could have been obtained only if the prosecution actively sought it. For the trial court to require production by the [S]tate of this evidence (not in the prosecution's file) would require the [S]tate to investigate the case for the defense.' [Cit.] Appellant may not serve a notice on the [prosecutor] to produce items otherwise available and then take the position that the [prosecutor] as 'the titular head of the investigation' should produce them. [Cit.]" *Fletcher v. State*, 157 Ga. App. 707, 708 (278 SE2d 444) (1981). In any event, the record discloses certified copies of three felony convictions of Parker tendered into evidence by appellant Hill and admitted by the trial court. Simmons thus suffered no harm from the trial court's ruling, and we find no merit in this enumeration of error.

6. We have carefully reviewed appellants' allegations of error in regard to the trial court's denial of their motions for severance. We find no abuse of discretion. See, e.g., *Cain v. State*, 235 Ga. 128 (218 SE2d 856) (1975); *Goins v. State*, 164 Ga. App. 37 (3) (296 SE2d 229) (1982); see also *Parrish v. State*, 160 Ga. App. 601 (1) (287 SE2d 603)

(1981). Therefore, Simmons' seventh and Hill's eleventh enumerations of error have no merit.

7. In his eighth enumeration of error Simmons argues that the trial court erred in overruling his motion in limine relating to acts alleged to have occurred prior to July 12, 1983, the date Brenda Parker was alleged to have notified law enforcement officials of the subject conspiracy to murder. The evidence apparently objected to related to previous attempts by appellants to murder Kenneth Hill. Simmons' objection at trial challenged this evidence on the grounds that it was entirely prejudicial to him and was irrelevant to the conspiracy charged in the indictment.

It is obvious that the evidence here objected to disclosed acts done in pursuance or in furtherance of the conspiracy to kill Kenneth Hill and thus was admissible. Accord *Llewellyn v. State*, 241 Ga. 192 (3) (243 SE2d 853) (1978). Furthermore, " '[w]here acts, either prior or subsequent, closely connected in point of time, tend to show motive, intent, and state of mind on the part of the defendant regarding· the offense for which he is on trial, and thus tend to prove the charge at issue, they are admissible although they incidentally at the same time show other criminal or unfavorable conduct. (Cits.) Evidence is also admissible to show other attempts to perpetrate the same offense on the same victim. (Cit.)' *Barber v. State*, 95 Ga. App. 763, 764 (98 SE2d 575) (1957)." *Buffington v. State*, 171 Ga. App. 919, 922 (321 SE2d 418) (1984). See *Hewitt v. State*, 127 Ga. App. 180 (4) (193 SE2d 47) (1972). The trial court did not err in denying Simmons' motion in limine.

8. Appellants both assign error to the trial court's refusal to conduct a hearing in order to determine the admissibility of certain tape recordings which contained out-of-court statements by the appellant co-conspirators. Appellants cite *United States v. James*, 590 F2d 575 (5th Cir. 1979), for the proposition that such a hearing is necessary as a preliminary matter in order to show substantial independent evidence of conspiracy, at least enough to take the question to the jury. Such a showing, they argue, is necessary before out-of-court statements by co-conspirators shall be admissible.

The holding in *James* is. based upon the Fifth Circuit's interpretation of the Federal Rules of Evidence. The rule in Georgia, however, does not require such a hearing. " 'While it may generally be the better practice to require a prima facie case of conspiracy first to be made, before admitting evidence of the acts and declarations of one of the alleged conspirators, there is no inflexible rule to that effect. The trial court has some discretion as to the order in which testimony may be introduced; and if a prima facie case of conspiracy is shown from the whole evidence, the admitting of such testimony is not error.' [Cits.]" *Yeargin v. State*, 164 Ga. App. 835, 836-37 (298 SE2d 606)

(1982). See *Blalock v. State,* 250 Ga. 441 (2) (298 SE2d 477) (1983). We note that the trial court, in denying appellants' motions, instructed the jury that they must first find that a conspiracy did in fact exist before they could consider any statements made by one conspirator against the other. From the evidence as a whole, the State clearly met its burden of establishing a prima facie case of conspiracy. We thus find no error in the trial court's admitting the subject tape recordings without a preliminary hearing on the matter. Simmons' ninth and Hill's twelfth enumerations of error are without merit.

9. Contrary to the assertions in Simmons' tenth and Hill's eighth enumerations of error, the record discloses that the State laid a proper foundation for the admissibility of certain taped conversations between appellants and Special Agent Hayes. See *Elliott v. State,* 168 Ga. App. 781 (3) (310 SE2d 758 (1983). Once the proper foundations had been laid, appellants' assertions that they felt threatened by Hayes or were under duress did not affect the admissibility of the tape recordings but rather presented a question of fact for jury resolution as to the weight to be accorded this evidence. See, e.g., *Phillips v. State,* 206 Ga. 418 (4c) (57 SE2d 555) (1950); *Bryant v. State,* 191 Ga. 686 (1a) (13 SE2d 820) (1941); *Williams v. State,* 142 Ga. App. 764 (9) (236 SE2d 893) (1977); *Newton v. State,* 132 Ga. App. 873 (2) (209 SE2d 690) (1974). We are aware of no requirement that the foundation for admissibility of tape recordings (other than in-custody statements) be first laid at a hearing outside the presence of the jury.

10. Simmons' eleventh and Hill's ninth enumerations cite as error the trial court's denial of their motions for continuance in order to review the transcripts made of the tape recordings which were played at trial. See Division 9, supra. Such motions address themselves to the sound discretion of the trial court. *Hufstetler v. State,* 171 Ga. App. 106 (2) (319 SE2d 869) (1984). It is clear that appellants were not entitled to a pretrial review of the tapes or the transcripts thereof. See Division 5, supra. Moreover, there is no merit to their argument that a review of the transcripts was needed in order to properly prepare their defenses, because the conversations on the tapes were carried on by appellants themselves with Special Agent Hayes. See *Tarpkin v. State,* 236 Ga. 67 (2) (222 SE2d 364) (1976). We find no abuse of discretion under these circumstances.

11. In his twelfth enumeration of error Simmons argues that the trial court erred in denying his motion for mistrial because of certain allegedly prejudicial remarks contained in the taped conversations between appellants and Special Agent Hayes. "There was evidence tending to show a conspiracy; and this evidence . . . [of] declarations of an alleged conspirator pending the conspiracy . . . was part of the res gestae, and was admissible." *West v. State,* 153 Ga. 327 (112 SE 150) (1921). See also *Callahan v. State,* 229 Ga. 737 (3) (194 SE2d

431) (1972); *McGee v. State*, 121 Ga. App. 221 (1) (173 SE2d 427) (1970). As part of the res gestae of the crime of conspiracy, the taped conversations were admissible even though they tended to place Simmons' character in issue. See *Gravely v. State*, 169 Ga. App. 757 (1) (315 SE2d 271) (1984); *Williams v. State*, 142 Ga. App. 764 (8), supra. This enumeration of error has no merit.

12. We find no merit in appellants' contention that it was improper to allow the prosecutor to remark in closing argument on their failure to call Brenda Parker as a witness. *Lowry v. State*, 171 Ga. App. 118 (3) (318 SE2d 744) (1984); *Mention v. State*, 171 Ga. App. 116 (3) (318 SE2d 765) (1984). We view the prosecutor's statement that Parker "sat out here two days waiting to be called," while concedely a matter dehors the record, as not so flagrantly prejudicial as to violate appellants' right to a fair trial, particularly in light of the trial court's reminder to the jury that they were to "remember whether or not the matter . . . was, in fact, mentioned previously." " 'What the law forbids is the introduction into a case, by way of argument, of facts not in the record and calculated to prejudice the accused.' . . . [Cit.] 'In our opinion, therefore, the question in every case turns upon whether the nature of the argument is such that it is manifestly improper and prejudicial to the rights of the opposite party. If the nature of the remark is such that it can plainly be seen that it could not have affected the result, the error would be harmless, and would afford no ground for a new trial. For this reason, if the argument was directed to some collateral matter not directly affecting the guilt or innocence of the accused in a criminal trial, though the argument might be improper, the error would seem to be immaterial.' [Cit.] In the instant case, . . . [Cit.], '[t]he facts were rather overstated; not sufficiently so, however, to authorize a new trial on that ground.' " *Fountain v. State*, 23 Ga. App. 113, 121-22 (98 SE 178) (1918), reversed on other grounds, 149 Ga. 519 (101 SE 294) (1919). See also *Holcomb v. State*, 130 Ga. App. 154 (1) (202 SE2d 529) (1973).

13. Appellant Hill's third and fourth enumerations assign error to a ruling by the trial court which precluded defense counsel on cross-examination of a State's witness from eliciting from the witness evidence of Brenda Parker's activities as an alleged undercover agent or informant in matters subsequent to the case at bar. Parker was not called to testify by any party; nevertheless, Hill argues that this information was vital and material to the establishment of her entrapment defense in that the benefits Parker received would be relevant as to her motives in cooperating with law enforcement officials. We disagree. The record discloses that Parker in fact received certain financial remuneration and other assistance from law enforcement authorities as the result of her assistance in this case. This information was

arguably relevant to the case at bar. See generally *Hines v. State*, 249 Ga. 257 (2) (290 SE2d 911) (1982). Evidence of Parker's assistance to law enforcement authorities in other case, however, was clearly neither relevant nor material to the issues in this case. See *Quinton v. Peck*, 195 Ga. 299 (5) (24 SE2d 36) (1943). Cf. *Head v. John Deere Plow Co.*, 71 Ga. App. 276 (1) (30 SE2d 662) (1944). We find no abuse of the trial court's discretion in limiting the scope of cross-examination in this matter. See generally *Mercer v. State*, 169 Ga. App. 723 (3) (314 SE2d 729) (1984).

14. At the time certain tape recordings were played at trial, transcripts thereof were distributed to the jury. The trial court sua sponte instructed the jury at this time that the transcripts were being provided so that they "might follow along with [them] to determine whether or not that is in fact what was said on the tape. It's up to you ultimately to determine what was said, so, this is a transcript of what is purportedly on the tapes . . . You will not keep these transcripts. They will be taken up from you at the conclusion of the playing of these tapes." After the tape recordings concluded, the transcripts were collected from the jury. The transcripts were not tendered as evidence. Under these circumstances, we find no merit in Simmons' fourteenth enumeration which cites as error the trial court's refusal to give in its final charge to the jury substantially the same instruction it had given before the tape recordings were played.

15. In Simmons' fifteenth enumeration of error, he contends that the trial court erred in refusing to give his request to charge based on *Steve M. Solomon, Jr., Inc. v. Edgar*, 92 Ga. App. 207 (3) (88 SE2d 167) (1955). In essence, the requested charge required that, before the jury could consider any tape recorded evidence, they would first have to determine that the seven safeguards enumerated in *Steve M. Solomon* at 211-12 had been established. We find no error. The seven safeguards listed in *Steve M. Solomon* must be shown in order to establish a foundation for the *admissibility* of such evidence. "It is the province of the judge in all instances to determine the admissibility of evidence. But it is the province of the jury to determine what weight shall be given to the evidence that has been admitted." *Brock v. State*, 206 Ga. 397, 400 (57 SE2d 279) (1950). "The trial court having correctly performed its function and determined the legal question of the admissibility of evidence under [*Steve M. Solomon*, supra], the only 'relevant' issue for the jury was the weight and effect to give that evidence." *Beaman v. State*, 161 Ga. App. 129, 131 (291 SE2d 244) (1982). See also *Williams v. State*, 142 Ga. App. 764 (9), supra. Because the written request here sought to have the jury re-determine the "admissibility" of any tape recordings, it was inapt and an incorrect statement of the law, and the trial court properly refused the request. See generally *Green v. State*, 124 Ga. 343 (8) (52 SE 431)

(1905); *Prater v. State*, 171 Ga. App. 122 (3) (318 SE2d 816) (1984).
We find no error for any reason assigned.

*Judgments affirmed. Benham, J., concurs. Banke, C. J., concurs in the judgment only.*

DECIDED MARCH 14, 1985 —
REHEARING DENIED MARCH 27, 1985 — 

*William P. Slack*, for appellant (case no 69037).
*William Ralph Hill, Jr.*, for appellant (case no. 69038).
*David L. Lomenick, Jr.*, District Attorney, *David J. Dunn, Jr.*, Assistant District Attorney, for appellee.